**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| CHARLESTON PEACHLYN, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| EAST COAST ASSEMBLERS, INC. d/b/a NATIONAL ASSEMBLERS, INC. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Charleston Peachlyn (Peachlyn) brings this collective action lawsuit to recover unpaid overtime wages and other damages from East Coast Assemblers, Inc. d/b/a National Assemblers, Inc. (National Assemblers) under the Fair Labor Standards Act (FLSA).

2. Peachlyn worked for National Assemblers as an Assembler and Trainer.

3. Peachlyn and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4. But National Assemblers did not pay them overtime wages.

5. Instead, National Assemblers paid its Assemblers on a piece rate basis, paying them a set amount for each item they assembled with no overtime compensation.

6. Likewise, National Assemblers paid its Trainers the same hourly rate for all hours worked, including those worked after 40 in a workweek (or "straight time for overtime").

7. National Assemblers' uniform piece rate pay scheme violates the FLSA by depriving Peachlyn and the other Assemblers of overtime pay when they work more than 40 hours in a workweek.

8. Likewise, National Assemblers' uniform straight time for overtime pay scheme violates

1

the FLSA by depriving Peachlyn and the other Trainers of the "time and a half" overtime pay they are owed for all hours worked after 40 in a workweek.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court has general personal jurisdiction over National Assemblers because National Assemblers maintains its principal place of business in Lake Worth, Florida and, therefore, resides in the State of Florida.

11. Venue is proper because National Assemblers maintains its headquarters in Lake Worth, Florida, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

12. Peachlyn worked for National Assemblers as an Assembler and Trainer from approximately February 2017 until March 2023.

13. While working as an Assembler, National Assemblers paid Peachlyn under its piece rate pay scheme, paying him a set amount (ranging from $3-$42) for each item he assembled and failed to pay him overtime when he worked more than 40 hours in a workweek.

14. While working as a Trainer, National Assemblers paid Peachlyn straight time for overtime.

15. Peachlyn's written consent is attached as **Exhibit 1**.

16. Peachlyn brings this action on behalf of himself and all other similarly situated Assemblers who National Assemblers paid under its illegal piece rate pay scheme, as well as all other similarly situated Trainers who National Assemblers paid under its illegal straight time for overtime pay scheme.

17. National Assemblers paid each of its Assemblers a set amount for each item they

assembled and failed to pay them overtime when they worked more than 40 hours in a workweek.

18. National Assemblers paid each of its Trainers the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

19. The putative collective of similarly situated Assemblers is defined as:

> **All Assemblers who National Assemblers paid on a piece rate basis at any time during the past 3 years (the "Assemblers").**

20. The putative collective of similarly situated Trainers is defined as:

> **All Trainers who National Assemblers paid straight time for overtime at any time during the past 3 years (the "Trainers").**

21. The Assemblers and the Trainers are collectively referred to as the "Putative Class Members."

22. National Assemblers is a New Jersey corporation that maintains its headquarters in Lake Worth, Florida.

23. National Assemblers may be served with process by serving its registered agent: **Glenn Schneider, 2445 Quantum Blvd., Boynton Beach, Florida 33426**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

24. At all relevant times, National Assemblers has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. At all relevant times, National Assemblers has been part of an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. At all relevant times, National Assemblers has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, personal protective equipment, etc.—that have been moved in or produced

3

for commerce.

27. In each of the past 3 years, National Assemblers has had an annual gross volume of sales made or business done of not less than $500,000 each year.

28. At all relevant times, Peachlyn and the Putative Class Members were National Assemblers' "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

29. At all relevant times, Peachlyn and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30. National Assemblers uniformly applied its piece rate pay scheme to Peachlyn and the other Assemblers.

31. As a result of National Assemblers' uniform piece rate pay scheme, Peachlyn and the Assemblers do not receive overtime wages when they work more than 40 hours in a workweek.

32. National Assemblers' uniform piece rate pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

33. National Assemblers uniformly applied its straight time for overtime pay scheme to Peachlyn and the other Trainers.

34. As a result of National Assemblers' uniform straight time for overtime pay scheme, Peachlyn and the Trainers do not receive overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

35. National Assemblers' uniform straight time for overtime pay scheme therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

36. National Assemblers provides professional assembly services to retail stores, like

WalMart, across the county.[1]

37. To meet its business objectives, National Assemblers hires Assemblers (including Peachlyn and the other Assemblers) to assemble products (e.g., bicycles, grills, patio sets, furniture, exercise equipment, swing sets, gaming tables, TV mounts, etc.) for its retail store clients.

38. Likewise, to meet its business objectives, National Assemblers hires Trainers (including Peachlyn and the other Trainers) to train newly hired Assemblers how to assemble various products.

39. National Assemblers uniformly pays its Assemblers, including Peachlyn and the other Assemblers, under its piece rate pay scheme.

40. Specifically, National Assemblers pays each of its Assemblers a set amount for each item they assemble and fails to pay them overtime when they work more than 40 hours in a workweek.

41. National Assemblers uniformly pays its Trainers, including Peachlyn and the other Trainers, under its straight time for overtime pay scheme.

42. Specifically, National Assemblers pays each of its Trainers the same hourly rate for all hours worked, including those worked after 40 hours in a workweek.

43. While exact job titles and precise job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

44. For example, Peachlyn worked for National Assemblers as an Assembler and a Trainer from approximately February 2017 until March 2023.

45. While working as an Assembler, National Assemblers paid Peachlyn on a piece rate basis (without overtime wages).

46. Specifically, National Assemblers paid Peachlyn a set amount (ranging from $3-$42)

---

[1] https://www.nationalassemblers.com/about (last visited August 22, 2023).

5

for each item he assembled and failed to pay him overtime compensation when he worked in excess of 40 hours in a workweek.

47. While working as a Trainer, National Assemblers paid Peachlyn straight time for overtime.

48. Specifically, National Assemblers paid Peachlyn the same hourly rate ($16/hour) for all hours worked, including those worked after 40 hours in a workweek.

49. National Assemblers uniformly pays its Assemblers on a piece rate basis (without overtime).

50. Further, National Assemblers uniformly pays its Trainers on an hourly basis.

51. Instead of paying its Trainers overtime wages at 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, National Assemblers pay them the same hourly rate for all hours worked.

52. National Assemblers requires its Trainers to record their hours worked and pays them the same hourly rate for all hours worked, including those worked after 40 in a workweek.

53. National Assemblers never paid the Trainers (or the Assemblers) on a "salary basis."

54. National Assemblers did not pay its Trainers (or its Assemblers) a guaranteed salary that was not subject to deductions.

55. If the Trainers work fewer than 40 hours, National Assemblers only pays them for the hours they actually work.

56. But Peachlyn and the Putative Class Members regularly work more than 40 hours in a workweek.

57. Peachlyn worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

58. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

59. Indeed, Peachlyn and the Putative Class Members typically work 8-16 hours a day, for 5-6 days a week.

60. Peachlyn and the other Putative Class Members work in accordance with the schedule set by National Assemblers (and/or its clients).

61. When Peachlyn and the Putative Class Members work more than 40 hours in a workweek, National Assemblers does not pay them overtime at rates not less than 1.5 times their regular rates of pay.

62. Rather, National Assemblers only pays Peachlyn and the Assemblers set amounts for each item they assemble.

63. And National Assemblers only pays Peachlyn and the Trainers straight time for overtime.

64. Despite misclassifying Peachlyn and the Putative Class Members as exempt from overtime, Peachlyn and the other Putative Class Members primarily perform non-exempt job duties.

65. The Putative Class Members' primary duties do not include supervising other National Assemblers employees.

66. The Putative Class Members' primary duties are not management.

67. The Putative Class Members' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

68. Rather, Putative Class Members' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by National Assemblers.

69. Virtually every job function is predetermined by National Assemblers, including the tools and equipment used, the products to assemble, the schedule of work, and related work duties.

70. Indeed, as Assemblers, Peachlyn's and the other Assemblers' primary responsibilities include assembling products for National Assemblers' retail store clients.

71. Likewise, as Trainers, Peachlyn's and the other Trainers' primary responsibilities include teaching newly hired Assemblers how to assemble various products.

72. In sum, Peachlyn and the Putative Class Members are non-exempt employees and, therefore, entitled to overtime wages.

73. But National Assemblers does not pay these non-exempt employees, including Peachlyn and the other Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay when they work more than 40 hours in a workweek in violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

74. Peachlyn incorporates all other paragraphs by reference.

75. Peachlyn brings his claims as a collective action on behalf of himself and the other Putative Class Members.

76. The Assemblers are uniformly victimized by National Assemblers' piece rate pay scheme, which is in willful violation of the FLSA.

77. Likewise, the Trainers are uniformly victimized by National Assemblers' straight time for overtime pay scheme, which is in willful violation of the FLSA.

78. Other Putative Class Members worked with Peachlyn and indicated they were paid in the same manner, performed similar work, and were subject to National Assemblers' same piece rate and/or straight time for overtime pay schemes.

79. Based on his experience with National Assemblers, Peachlyn is aware National Assembles' illegal practices were imposed on the Putative Class Members.

80. The Putative Class Members are similar situated in all relevant respects.

81. Even if their precise job duties and locations might vary, these differences do not

matter for the purposes of determining their entitlement to overtime.

82. Any relevant exemption defenses would require National Assemblers to pay the Putative Class Members on a salary basis.

83. Because National Assemblers fails the salary basis test with respect to the Putative Class Members, the specific job duties performed by those employees are largely irrelevant.

84. The relevant job duty is whether the Putative Class Members worked more than 40 hours in a week.

85. Therefore, the specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

86. Rather, National Assemblers' uniform piece rate and/or straight time for overtime pay scheme render Peachlyn and the Putative Class Members similar situated for the purposes of determining their right to overtime pay.

87. National Assemblers' records reflect the number of hours worked each week by the Putative Class Members.

88. National Assemblers' records also show the Assemblers were paid on a piece rate basis without overtime for their overtime hours worked.

89. Likewise, National Assemblers records show the Trainers were paid "straight time," instead of "time and a half," for their overtime hours worked.

90. The back wages owed to Peachlyn and the other Putative Class Members can be calculated using the same formula applied to the same records.

91. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to National Assemblers' records, and there is no detraction from the common nucleus of liability facts.

92. Therefore, the issue of damages does not preclude collective treatment.

93. Peachlyn's experiences are therefore typical of the experiences of the Putative Class Members.

94. Peachlyn has no interest contrary to, or in conflict with, the Putative Class Members.

95. Like each Putative Class Member, Peachlyn has an interest in obtaining the unpaid wages owed under federal law.

96. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97. Absent this collective action, many Putative Class Members will not obtain redress for their injuries, and National Assemblers will reap the unjust benefits of violating the FLSA.

98. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

99. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

100. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

101. Among the common questions of law and fact are:

   a. Whether National Assemblers applied its piece rate pay scheme uniformly to the Assemblers;

   b. Whether National Assemblers applied its straight time for overtime pay scheme uniformly to the Trainers;

   c. Whether National Assemblers misclassified Peachlyn and the Putative Class Members as exempt from the FLSA's overtime provisions;

   d. Whether Peachlyn and the Putative Class Members are non-exempt employees entitled to overtime wages;

  e. Whether National Assemblers' piece rate pay scheme satisfies the "salary basis" test;

  f. Whether National Assemblers' straight time for overtime pay scheme satisfies the "salary basis" test;

  g. Whether National Assemblers' piece rate pay scheme deprived Peachlyn and the Assemblers of the premium overtime wages they are owed under the FLSA;

  h. Whether National Assemblers' straight time for overtime pay scheme deprived Peachlyn and the Trainers of the premium overtime wages they are owed under the FLSA;

  i. Whether National Assemblers' decision to classify Peachlyn and the Putative Class Members as exempt from overtime was made in good faith;

  j. Whether National Assemblers' decision not to pay Peachlyn and the Putative Class Members overtime was made in good faith; and

  k. Whether National Assemblers' FLSA violations were willful.

102. Peachlyn knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

103. As part of its regular business practices, National Assemblers intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Putative Class Members.

104. National Assemblers' illegal piece rate pay scheme deprived Peachlyn and the other Assemblers of the premium overtime wages they are owed under federal law.

105. Likewise, National Assemblers' illegal straight time for overtime pay scheme deprived Peachlyn and the other Trainers of the premium overtime wages they are owed under federal law.

106. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

107. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

108. The Putative Class Members are known to National Assemblers, are readily identifiable, and can be located through National Assemblers' business and personnel records.

### NATIONAL ASSEMBLERS' FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

109. Peachlyn incorporates all other paragraphs by reference.

110. National Assemblers knew it was subject to the FLSA's overtime provisions.

111. National Assemblers knew the FLSA requires it to pay employees, including Peachlyn and the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

112. National Assemblers knew it paid the Assemblers on a piece rate basis.

113. National Assemblers knew it paid the Trainers on an hourly basis.

114. National Assemblers knew it paid the Trainers straight time for overtime.

115. National Assemblers knew it never paid the Putative Class Members of a "salary basis."

116. National Assemblers knew it did not pay the Putative Class Members a guaranteed salary that was not subject to deduction.

117. National Assemblers knew its piece rate pay scheme did not satisfy the salary basis test.

118. National Assemblers knew its straight time for overtime pay scheme did not satisfy the salary basis test.

119. National Assemblers knew it needed to pass the salary basis test to qualify for the exemptions it claimed with respect to the Putative Class Members.

120. National Assemblers knew the Putative Class Members' primary duties did not include supervising other National Assemblers' employees.

121. National Assemblers knew the Putative Class Members' primary duties were not management.

122. National Assemblers knew the Putative Class Members' primary duties did not include exercising independent discretion or judgment with respect to matters of significance.

123. National Assemblers knew the Putative Class Members primarily performed non-exempt work.

124. Nonetheless, National Assemblers uniformly misclassified the Putative Class Members as exempt and refused to pay them overtime.

125. National Assemblers' decision to misclassify the Putative Class Members as exempt employees was neither reasonable, nor was the decisions to misclassify these employees as exempt made in good faith.

126. Likewise, National Assemblers' failure to pay the Putative Class Members overtime wages was neither reasonable, now was the decision not to pay these employees overtime wages made in good faith.

127. National Assemblers knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA.

128. National Assemblers knowingly, willfully, and/or in reckless disregard carried out its illegal piece rate and straight time for overtime pay schemes that deprived Peachlyn and the Putative Class Members of premium overtime wages for hours worked after 40 in a workweek in violation of the FLSA.

129. Indeed, National Assemblers has been repeatedly sued by employees (including Assemblers and Trainers) for failing to pay them overtime wages in violation of the FLSA and analogous state wage and hour laws. *See*, *e.g.*, *Schlegel v. East Coast Assemblers, Inc. d/b/a National Assemblers*, No. 9:16-CV-80838 (S.D. Fla.); *Arden, et al. v. East Coast Assemblers, Inc. d/b/a National Assemblers*, No. 2:14-CV-02290 (D. Az.); *Shand v. East Coast Assemblers, Inc. d/b/a National Assemblers*, No. 2:14-CV-01141 (E.D.N.Y.); *Cooper v. East Coast Assemblers, Inc. d/b/a National Assemblers*, No. 9:12-CV-80995 (S.D. Fla.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

130. Peachlyn incorporates all other paragraphs by reference.

131. Peachlyn brings his FLSA claim as a collective action on behalf of himself and the Putative Class Members.

132. National Assemblers has violated, and is violating, the FLSA by employing non-exempt employees (Peachlyn and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they work after 40 in a workweek.

133. National Assemblers' unlawful conduct harmed Peachlyn and the Putative Class Members by depriving them of the overtime wages they are owed.

134. Accordingly, Peachlyn and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

135. Peachlyn demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Peachlyn, individually and on behalf of the Putative Class Members, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing their written consents;

    b. An Order pursuant to Section 16(b) of the FLSA finding National Assemblers liable for unpaid back wages due to Peachlyn and the Putative Class Members, plus liquidated damages in an amount equal to their unpaid wages;

    c. A Judgment against National Assemblers awarding Peachlyn and the Putative Class Members all their unpaid overtime compensation plus an equal amount as liquidated damages;

    d. An Order awarding attorneys' fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

    f. Such other and further relief as may be necessary and appropriate.

Dated: August 23, 2023.

Respectfully submitted,

**MORGAN & MORGAN, PA**

By: /s/ C. Ryan Morgan
C. Ryan Morgan
FL Bar No. 0015527
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone:	(407) 420-1414
Facsimile:	(407) 245-3401
Email:	rmorgan@forthepeople.com
*Local Counsel for Plaintiff*

Michael A. Josephson\*
TX Bar No. 24014780
Andrew W. Dunlap\*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:	(713) 352-1100
Facsimile:	(713) 352-3300
Emails:	mjosephson@mybackwages.com
	adunlap@mybackwages.com

Richard J. (Rex) Burch\*
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:	(713) 877-8788
Facsimile:	(713) 877-8065
Email:	rburch@brucknerburch.com

\**Pro hac vice applications forthcoming*

**ATTORNEYS FOR PEACHLYN &
THE PUTATIVE CLASS MEMBERS**